# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-01342-COA

ANTONIO BURGIN                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                              APPELLEE

DATE OF JUDGMENT:                09/04/2014
TRIAL JUDGE:                     HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:       LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          ANTONIO BURGIN (PRO SE)
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: SCOTT STUART
NATURE OF THE CASE:              CIVIL - POSTCONVICTION RELIEF
TRIAL COURT DISPOSITION:         DENIED APPELLANT'S MOTION FOR
                                 POSTCONVICTION RELIEF
DISPOSITION:                     AFFIRMED - 10/06/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Antonio Burgin appeals the Lowndes County Circuit Court's denial of his motion for

postconviction relief (PCR).  On appeal, Burgin raises the following issues:  (1) whether his

sentence is illegal; (2) whether his plea was involuntary; (3) whether there was sufficient

evidence to support his conviction; and (4) whether he received ineffective assistance of

counsel.  Finding no error, we affirm.

## FACTS

¶2.     In April 2011, a grand jury indicted Burgin for Count I, armed robbery, and Count II,

aggravated assault. Although Burgin's indictment correctly identified Mississippi Code Annotated section 97-3-7 (Supp. 2010) as the charging statute for Count II, the indictment incorrectly identified Mississippi Code Annotated section 97-3-73 (Rev. 2006) as the charging statute for Count I. Section 97-3-73 pertains to simple robbery. For the crime of armed robbery, Count I of Burgin's indictment should have identified Mississippi Code Annotated section 97-3-79 (Rev. 2006) as the applicable statutory section.

¶3. Despite identifying the incorrect charging statute, the heading of Burgin's indictment correctly stated that armed robbery was the offense charged in Count I. In addition, the body of Burgin's indictment charged the statutory elements of armed robbery and stated in pertinent part:

> [Burgin] did unlawfully, willfully, and feloniously[] attempt to take, steal, and carry away from the person or presence of [the victim] the personal property of [the victim], to-wit: [m]oney, against the will of the said [victim] and without his consent by putting the said [victim] in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a pistol[.]

Count I of Burgin's indictment for armed robbery therefore tracked the statutory language in section 97-3-79, which defines armed robbery as the "feloniously tak[ing] or attempt[ing] to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon . . . ."

¶4. On November 20, 2012, the circuit court granted the State's motion to amend Burgin's indictment to reflect his status as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2007). On November 26, 2012, Burgin signed and filed a plea

2

petition acknowledging his intention to plead guilty to the crime of armed robbery. The petition acknowledged Burgin's understanding that he could receive a sentence between three years and life imprisonment for armed robbery. In exchange for Burgin's guilty plea to armed robbery, the State recommended that the circuit court retire Count II of Burgin's indictment for aggravated assault. The State further recommended that the circuit court fine Burgin an amount to be set by the court and sentence Burgin to twenty-three years in the custody of the Mississippi Department of Corrections (MDOC), with five years of postrelease supervision (PRS).

¶5. At Burgin's plea hearing, the State moved to withdraw its earlier motion to sentence Burgin as a habitual offender and instead asked that the circuit court allow Burgin to plead guilty to armed robbery as a non-habitual offender. Although the circuit court decided to hold its ruling in abeyance until completing Burgin's plea, the circuit court stated that it would proceed under the premise that Burgin was not a habitual offender. Burgin informed the circuit court of his intention to plead guilty to Count I of his indictment for armed robbery. In response to the circuit court's questioning, Burgin acknowledged that he understood the circuit court could impose a sentence ranging from three years to something just less than his life expectancy and could fine him up to $10,000.

¶6. While under oath, Burgin admitted that he understood the rights he waived by pleading guilty, that he was satisfied with the legal representation provided by his attorney, that he had discussed the consequences of his guilty plea and the contents of his plea petition with his attorney, and that he was, in fact, guilty of the crime of armed robbery. Burgin

3

further stated while under oath that he was not impaired in any way and that no one had offered him an inducement in exchange for his guilty plea or threatened him to compel his guilty plea.

¶7. During Burgin's plea hearing, the State offered to prove the following facts if the case proceeded to trial:

> [O]n the date that's alleged in the indictment, the victim in this particular case . . . had a business here in the [C]ity of Columbus. That [Burgin,] along with another individual[,] entered the [victim's] business with guns and attempted to take the personal property from the victim in this particular case. And in the midst of that robbery, the victim was actually shot.

After hearing from the State, the circuit court asked Burgin whether the facts presented by the State were true, and Burgin responded affirmatively. The circuit court then informed Burgin one more time of the minimum and maximum penalties he could receive for the crime of armed robbery.

¶8. Before accepting Burgin's guilty plea, the circuit court asked Burgin's attorney whether she knew of any legal reason why the circuit court should not accept Burgin's plea. In response, Burgin's attorney answered that she did not. Burgin's attorney stated that she and Burgin had reviewed the discovery provided by the State and that Burgin had identified several facts that were of interest to her. In addition, Burgin's attorney stated that Burgin had demonstrated a good understanding of the case and had been helpful in reviewing the case and making decisions. For the purpose of making a record, Burgin's attorney explained that the following facts led to Burgin's decision to plead guilty: (1) Burgin received gunshot wounds during the commission of the armed robbery that required him to seek medical

treatment; and (2) Burgin's blood was discovered at the crime scene.

¶9.    After hearing from the State and from Burgin's attorney, the circuit court asked Burgin for a third time how he pleaded to the charge of armed robbery. Like the prior two times, Burgin stated his intention to plead guilty. Finding Burgin's plea to be voluntarily, knowingly, and intelligently given, the circuit court accepted Burgin's plea of guilty to armed robbery. Following Burgin's plea colloquy, the circuit court accepted the State's sentencing recommendation and sentenced Burgin to twenty-three years in MDOC's custody, with five years of PRS. Although the circuit court did not order Burgin to pay any court costs or fines, the court did order him to pay restitution. After determining that the victim's medical bills, lost wages, and property damage totaled $48,775, the circuit court ordered Burgin to pay $23,377.50 as his portion of the restitution owed to the victim.

¶10.    Less than two years after his sentencing, Burgin filed the instant PCR motion. After finding that each of Burgin's claims lacked merit, the circuit court denied Burgin's motion. Aggrieved by the circuit court's denial of his PCR motion, Burgin now appeals to this Court.

**STANDARD OF REVIEW**

¶11.    "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if it is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Carson v. State*, 161 So. 3d 153, 155 (¶2) (Miss. Ct. App. 2014) (citing *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

**DISCUSSION**

## I.  Whether Burgin's sentence is illegal.

¶12.    In his first assignment of error, Burgin asserts that the circuit court violated due process by imposing an illegal sentence on him that exceeds the maximum penalty provided by statute.  Burgin argues that he was indicted for and pled guilty to simple robbery pursuant to section 97-3-73, which carries a maximum sentence of only fifteen years.  *See* Miss. Code Ann. § 97-3-75 (Rev. 2006).  Burgin further contends that the circuit court erroneously sentenced him to twenty-three years in prison for committing armed robbery pursuant to section 97-3-79.  On appeal, Burgin argues his sentence exceeds the maximum penalty authorized by statute by eight years and must therefore be vacated.  In response to Burgin's argument, the State asserts that the incorrectly identified charging statute was merely a scrivener's error and that Burgin was correctly sentenced for armed robbery.

¶13.    "A sentence is not illegal unless it exceeds the maximum statutory penalty for the crime."  *Foster v. State*, 148 So. 3d 1012, 1016 (¶12) (Miss. 2014) (citation omitted).  "In Mississippi, the law is well-settled that sentences which are within the statutory limits will generally be upheld."  *Wilkins v. State*, 57 So. 3d 19, 24 (¶13) (Miss. Ct. App. 2010) (citation omitted).  "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.  As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal."  *Carson*, 161 So. 3d at 156-57 (¶7) (citations omitted).

¶14.    In reviewing Burgin's assignment of error, we acknowledge that Burgin correctly asserts that his indictment erroneously identified section 97-3-73 as the relevant statutory

6

section for Count I. Even so, we find no merit to Burgin's claim that he was indicted for and pled guilty to simple robbery pursuant to section 97-3-73 rather than armed robbery pursuant to section 97-3-79. In *Medlin v. State*, 35 So. 3d 564, 566 (¶6) (Miss. Ct. App. 2010), the defendant asserted an argument similar to the one raised by Burgin. In addressing the issue in *Medlin*, this Court stated:

> An indictment serves as notice to the defendant of the charges against him. When reviewing an indictment, we consider the substance of the indictment over the form of the indictment. There is no requirement that an indictment must include the statute number of the crimes charged. Thus, the statute number referenced in the indictment is of no consequence because we look to the substance of the indictment to determine whether it sufficiently gave notice of the pending charges.

*Id.* at (¶7) (internal citations omitted). In the present case, the substance of Count I of Burgin's indictment provided Burgin with sufficient notice of the pending charge against him for armed robbery.

¶15. Our caselaw clearly establishes that "the incorrect citation of a statute number does not alone render an indictment defective, but rather is 'mere surplusage' and not prejudicial to a defendant." *Evans v. State*, 916 So. 2d 550, 552 (¶6) (Miss. Ct. App. 2005) (quoting *White v. State*, 169 Miss. 332, 332, 153 So. 387, 388 (1934)). As previously discussed, although Burgin's indictment identified the charging statute as section 97-3-73, which proscribes simple robbery, the substance of Burgin's indictment tracked the language of section 97-3-79 and properly charged Burgin with armed robbery by the exhibition of a deadly weapon. As a result, despite Burgin's arguments to the contrary, the record reflects that the substance of Burgin's indictment clearly charged him with armed robbery and

7

provided sufficient notice of the charge against him.

¶16.    "Section 97-3-79 of the Mississippi Code requires a court to sentence a defendant convicted of armed robbery to a term less than life but not less than three years, if the jury does not return a life sentence." *Foster*, 148 So. 3d at 1016 (¶12) (citation omitted).  Thus, Burgin's sentence of twenty-three years in MDOC's custody, with five years of PRS, falls within the statutory sentencing guidelines.  As a result, we find no merit to Burgin's claim that his sentence is illegal.

**II.    Whether Burgin's plea was involuntary.**

¶17.    Burgin next claims that his guilty plea was not given voluntarily and intelligently because he was not advised "concerning the nature of the charge against him and [the] consequences of his plea."

¶18.    "The defendant bears the burden of proving that a guilty plea was involuntary.  If this burden is not met, the guilty plea must be upheld as knowing, intelligent[,] and voluntary." *Jewell v. State*, 946 So. 2d 810, 814 (¶15) (Miss. Ct. App. 2006) (citations omitted).  "A plea is voluntary if the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea." *Id.* at (¶16) (citation omitted).

¶19.    Despite Burgin's assertions on appeal, the record demonstrates that the circuit court thoroughly questioned Burgin before accepting his guilty plea to ensure that Burgin understood the charge against him and the consequences of his guilty plea.  At two different times during Burgin's plea hearing, the circuit court asked whether Burgin understood that,

by pleading guilty to armed robbery, he could receive a sentence between three years in prison to "something just less than [his] life expectancy." Each time the circuit court asked whether Burgin understood the minimum and maximum sentences of his armed-robbery charge, Burgin answered affirmatively.

¶20. In response to further questioning by the circuit court, Burgin admitted under oath that he understood the rights he waived by pleading guilty and that he had discussed the consequences of his guilty plea and the contents of his plea petition with his attorney. Burgin also informed the circuit court that he was satisfied with the legal representation provided by his attorney, that he was not impaired in any way, and that no one had offered him anything to induce him or to compel him to plead guilty.

¶21. Our caselaw recognizes that "[s]olemn declarations in open court by a defendant carry a strong presumption of veracity." *Jewell*, 946 So. 2d at 815 (¶16). Based on a review of the plea-hearing transcript and the solemn declarations Burgin made under oath, we find the record refutes Burgin's claim that his guilty plea was not given voluntarily, knowingly, and intelligently. As a result, we find that this issue lacks merit.

### III. Whether there was sufficient evidence to support Burgin's conviction.

¶22. While not specifically identified as an issue on appeal, Burgin's brief appears to also challenge the sufficiency of the evidence supporting his armed-robbery conviction. When properly entered and accepted, "[a] guilty plea operates to waive the defendant's . . . right that the prosecution prove each element of the offense beyond a reasonable doubt." *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989). After the circuit court explained the charge

9

against him for armed robbery, Burgin answered the charge by pleading guilty. As previously discussed, we find that Burgin's guilty plea was entered voluntarily, knowingly, and intelligently.[1] Therefore, we find that Burgin waived his right to have the State prove each element of armed robbery beyond a reasonable doubt, and we refuse to address any attempts by Burgin on appeal to litigate the question of his actual guilt. Accordingly, this argument lacks merit.

### IV. Whether Burgin received ineffective assistance of counsel.

¶23. In his final assignment of error, Burgin asserts that he received ineffective assistance of counsel because his attorney failed to fully advise him of the consequences of his guilty plea, allowed him to enter an involuntary guilty plea, and allowed the circuit court to impose an illegal sentence on him. However, Burgin fails to present any evidence to support his assertions, and the record clearly contradicts his claims.

¶24. To establish ineffective assistance of counsel, Burgin must demonstrate that his attorney's performance was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "In the context of guilty pleas, this means the defendant must show that, were it not for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Burrough v. State*, 9 So. 3d 368, 375 (¶22) (Miss. 2009) (citation omitted). "The burden of proving that both prongs of *Strickland* have been met is on the defendant[,] who faces a rebuttable presumption that trial counsel's conduct is within the wide range of reasonable conduct and that decisions made

---

[1] *See* URCCC 8.04(A) (discussing the entry of guilty pleas).

10

by counsel are strategic." *Fair v. State*, 102 So. 3d 1165, 1169 (¶12) (Miss. Ct. App. 2012) (citation omitted).

¶25.    As previously discussed, this Court finds that Burgin voluntarily entered a plea of guilty to armed robbery and that the circuit court sentenced Burgin within the applicable statutory sentencing guidelines. In addition, the record reflects that Burgin stated under oath during his plea colloquy that he was satisfied with the legal representation his attorney provided. "A defendant's declarations during the plea colloquy that he was satisfied with the services of his lawyer are presumptively true." *Palmer v. State*, 140 So. 3d 448, 453 (¶10) (Miss. Ct. App. 2014) (citation omitted). After reviewing the record, we find that Burgin's unsupported assertions fail to satisfy his burden to demonstrate that his attorney's performance was deficient and caused him prejudice. As a result, we find that this claim lacks merit.

¶26.    **THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**